I'm Robert Jobe, and I'm appearing today on behalf of Jorge Torres-Ramos. This is a man who resided in this country for more than 40 years as a lawful permanent resident. Before an immigration judge ordered him removed in absentia, after finding the unsworn Form I-213 at pages 97 and 98 of the administrative record, constitutes clear, convincing, and unequivocal evidence that Mr. Torres has been convicted of a deportable firearms offense. The I-213 in this case is quite different from most of those that this court has previously considered. In Espinoza v. INS, this court noted that most I-213s are essentially a recorded recollection of a conversation between an INS agent and an alien. In Espinoza, Trias, Hernandez, Tejada, Mata, and other cases, this court recognized that a properly authenticated I-213 recording an individual's voluntary admission of alienage is sufficient to meet the government's burden of establishing alienage and thus shift the burden to the alien, at least an alien charged with unlawful entry, to demonstrate where, when, and how he or she entered. But this case is extremely different from that. First, the I-213 in this case, it's not a recorded recollection of anything. Quite the contrary, the agent who prepared it, Chris Laska, he admits, and this is on page 98 of the administrative record, he says quite expressly that he never interviewed Mr. Torres before preparing this document and thus he never gave Mr. Torres any opportunity to contest his belief that Mr. Torres had been convicted of a firearms offense. Second, this is not a case about an alien who entered the United States without inspection. This is a case about a lawful permanent resident who is charged with deportability for having been convicted of a firearms offense. And as far as I can tell, Agent Laska never reviewed the official record of Mr. Torres' supposed conviction. And I say this for three reasons. First, the I-213 makes no mention at all of any official documents, any official record of conviction. Secondly, no official record of conviction or any part of it was ever presented to the immigration judge. And we've filed a motion to supplement the administrative record with a transcript of what took place at this in absentia hearing. I don't think the courts ruled on that. I don't think the government opposed it. But if you look at that transcript, the immigration judge expressly asked the government if it had any further evidence to present on the issue of deportability. And the government said no. It was going with this I-213. Gerald, may I ask you a really very different question? You've got three, I think, at least two major grounds for granting the petition, one of which is ineffective assistance of counsel as an exceptional circumstance. Right. As I understand it, the IJ's ruling, if not the BIA's, but the IJ's ruling was certainly before our decision in Lowe, which makes his decision rather clearly either problematic or wrong. If that were the case, then the in absentia order would have to be rescinded. Ab initio. And it would go back to square one, and we would not need to worry about the I-213 and the possibility of your admissions and all of those kind of squirrely things. Right? I don't agree with that. Why not? Well, I think the issue of deportability is a threshold question here. I guess it's for two reasons. I mean, first, the government takes the position that it goes to the scope of this court's jurisdiction. And just looking at the government's most recent submission, this 28J letter, the government's suggesting that this court's decision in Ramadan was incorrect. And it's raising an issue about whether this court even has jurisdiction to consider the issue of exceptional circumstances. So it seems to me that at the outset, the court should at first determine the scope of its own jurisdiction. Well, let's just say we had jurisdiction. Yeah. But I think there's another reason, and that is the government had a more than fair opportunity to litigate the issue of Mr. Torres' deportability, and it presented nothing more than this unsworn, unauthenticated I-213. And it seems to me that if the government failed to establish Mr. Torres' deportability, it would be profoundly unfair to burden this man with a continuing deportation proceeding when they've had the opportunity. In fact, they had better than a fair opportunity. At the time of the hearing, Mr. Torres wasn't even there. He had no lawyer to contest their evidence. He had no lawyer to present competing evidence. And still the government failed to make its case. And under those circumstances, yeah, I don't think it would be fair to give the government a second chance to prove deportability. Well, you see, I mean, you've got a problem. I mean, with respect to the judicial admissions now, I realize that that can go either way. Right. But the fact of the judicial admission does indeed detract from the point that the government couldn't even prove it because it's in effect conceded. Right. Well, I want to cover that, obviously. It's an important point. I don't agree that it's a binding admission at all. I understand there's an argument on both sides, but I'm just saying it slightly undercuts the strength of your position that there is no possible, the government can't possibly show removability. It's an issue that the court will have to address if it's going to address the issue of deportability as a threshold matter. But I want to make one more point about this issue, about why it would be unfair to give the government a second crack. If this case goes back, it's true that the in absentia order is rescinded ab initio. It's as if no hearing has taken place and we have a new hearing on the issue of deportability. And I think that would be unfair because, you know, as I said earlier in the transcript of this hearing, the judge expressly asked the government if it had any further evidence to present on this issue of deportability, and it said no. Under those circumstances, no. I don't think it's fair for the government to go back, you know, after this case has gone on for years and this guy's lived with an order of removal over his head, to give them another opportunity now to come and try to present a better case. I just don't think that's appropriate. Going back to this issue on the binding admission, you know, whether there's a binding admission, I certainly don't think that the statement in that brief, the brief to the BIA, can be construed as such. And I think this is on page, it's on page three of the administrative record. But the statement that we're talking about here was made in the context of an appeal from the immigration judge's denial of Mr. Torres' motion to rescind the in absentia order. And what's important about that is the Immigration Act couldn't be more clear. It says with absolute crystal clarity that in order to rescind an in absentia order of removal, it can only, that's the word it uses, an in absentia order of removal can be rescinded only upon the showing of one of three things. That the alien didn't get proper notice, that there were exceptional circumstances which justify his failure to appear, or that he was in federal or state custody. Those are the only issues that could have been made in the motion to rescind. Mr. Torres made an argument about improper notice. He also made an argument about exceptional circumstances. The judge denied those. And on appeal, he was restricted to litigating those two issues because by statute, those are the only ways that he could rescind the in absentia order of removal. The regulations expressly preclude any direct appeal from an in absentia order of removal. The only way you can overcome this administratively is by making a motion to rescind. And you do that only by asserting one of these three grounds. So those were the only issues before the board. And for purposes of the appeal that was made, it seems to me, the IJ's finding of deportability, it was binding. It was binding on the parties. Mr. Torres had no way to challenge that before the Board of Immigration Appeals. And so not, you know, strangely, in the statement of the case, it's not in the statement of the facts, but in the statement of the case, he said, Mr. Torres stands convicted of this firearms offense. For purposes of that appeal, that was true. Because for purposes of that appeal, that was an undisputed fact at that point. It's no longer the case, you know, in the Court of Appeals. But it seems to me that this is a far different situation from the cases that the government relies upon. You know, United States v. Benson in the Smagliani's case where admissions were made in court about issues that were squarely before the court in question when they were made. Unlike the admissions in those cases, you know, Mr. Ayala's opinion or statement to the Board of Immigration Appeals, it seems to me it's akin to dicta in a court opinion. That's what I would analogize it to. You know, when a court makes a statement in passing that's not central to the resolution of a case before it, and it doesn't reflect full consideration of all the potential alternatives on that issue, it's not binding. It's not binding on lower courts. It's not binding on, you know, the subsequent panel of the same court. And I would suggest that the same thing is true here. I mean, a lawyer should be treated with the same sort of, should be treated similarly to a court opinion. And it makes sense to me that limiting binding concessions to statements on issues that are actually presented to the court, that makes sense because obviously lawyers tend to be much less circumspect about what they say when they're talking about an issue that's not actually before the court at that time. And it would be profoundly unfair to hold Mr. Torres to this statement because, again, it was not an issue before the board, and this is, I mean, certainly no way to make the ultimate finding about his deportability. I'll reserve the balance of my time. May it please the Court. Michael Truman, behalf of the government. Your Honors, this petition for review should be denied because the I-213 constitutes clear and convincing evidence that Mr. Torres was convicted of a firearms offense. Ms. Truman, without, without, I got a couple of questions on that. One of them is, without sort of categorically saying that the I-213 can never constitute clear and convincing evidence, if I've got what happened here correctly, correct, the agent basically just gave his opinion of what it meant. And this, there's nothing binding from the alien or anything else in this use of the I-213. In this case, the I-213, the agent says that he has looked in the A file, the alien's file, and the INS databases and has found that he's subject to this conviction, this conviction provision. And it's important to keep in mind that this finding by the immigration judge of his removability is reviewed for substantial evidence. Well, but what is it other than the alien's, excuse me, the agent's opinion that his A file shows a conviction? Well, Your Honor. I mean, does it? Sorry, what's that? Does the A file show a conviction? This is, none of this is in the record. Well, I know. But the conviction documents do exist. So what may be, but what you've got is the agent saying, you know, I've looked at this, and you can't, but I have, and it shows he was convicted. And I don't see how that's enough. Well, in this Court's decision, Espinoza v. INS, it was referred to by Petitioner's Counsel, this Court upheld the validity of an I-213 to establish removability because of the presumption of regularity. I know. As I said, I'm not really quarreling. I'm not quarreling with the notion that under certain circumstances it could be. I'm trying to focus here on whether the agent's opinion about what it shows is enough. I suppose maybe I should ask, I mean, since I've asked the question, I have another question, and that is I haven't read the supplemental submission yet, but is it the case that the government said that it had nothing else as Mr. Joe just asserted? On that point, he said he's filed a motion. I've never seen a motion. I've never seen a transcript. No, no, no, but, I mean, he's represented that the transcript, I don't know what it means. The transcript's not in the record. He went and got the transcript apparently, but that's never been supplemented. Well, all right, well, never mind what he said. Let me just ask the question. Does the government have anything else that it could offer with respect to removability, or is the record here it? The government does have conviction documents, I learned today, just today, that there are conviction documents in this case. This is not in the record, though, but in answer to your question, yes, there is other material. Well, did the government have documents at that time, the time of the hearing, and did it say that it did not have? Again, that's not in the record either. It's not on the record, you say? No, because when it's in the case. No, on the record of the immigration hearing. Yeah, when it's in an absentia case, they don't make a transcript of the hearing because the alien failed to appear. So I think what Mr. Joe was saying is that he went and made a transcript from the tapes, he listened to it himself, but that's not in the record here. But you have tapes of the hearing. Yeah, there are tapes, and the party can go make transcripts of those tapes if the party goes to the immigration court. But that's not automatically put in the record when it's an absentia case. But you're not suggesting that Mr. Job is stating something that's not accurate? No, no. I don't know what happened in the hearing. Typically, though, if he had showed up to the hearing and contested his removability as charged, perhaps the government would have then produced the document. We don't know what happened because he didn't show up to his hearing in this case. I understand that. So he may have admitted, he may have conceded his removability and then pursued another application for relief. Well, let's proceed to whether or not we excuse his failure to appear because of incompetence of counsel. I guess that's the argument. Well, I actually think the ineffective assistance of counsel argument is a bit of a red herring here because he did receive actual notice, that's not really disputed, that he received the hearing notice in his office for immigration court. But it's also, I guess, undisputed that he sent it immediately to his lawyer and that he himself couldn't read it. That's right, but he knew what it was, obviously, enough to send it to his lawyer who was handling his immigration case. Well, we don't even know that. He sent it to his lawyer to tell him what it was. Well, I guess my point is he knew well enough to know who to send it to. And presumably he has someone close to him that could have interpreted to it. But, again, that's not the requirement here is simply to serve notice on the alien. The requirement isn't to sit down and read it with him necessarily. He's supposed to have notice, and he received that notice. He knew his hearing was coming up. And for whatever reason, he didn't follow up with his counsel to make sure he got his facts, the facts that he sent or whatever it was. But he received notice, according to the statute, that he was supposed to receive of his hearing aid, and it didn't show up. And I think another important point to remember in this case is that he never contests his removability as charged. He has never, ever contested it, and he doesn't even contest it in front of the court here today, his removability as charged. He claims that he could not have raised it in his appeal to the board because the statute limits him to raising exceptional circumstances and notice issues. That's probably technically accurate. Well, the statute limits him to those issues, but it doesn't require him to concede that he was convicted. I mean, I think if he was not convicted, he would have mentioned it in his appeal to the board. He should have mentioned it in his appeal to the board if that were the case. I mean, the statute doesn't require him to concede that he has this firearms offense as a basis for removability. There's no evidence, there's no compelling evidence, and I want to come back to the standard of review in this case. There's no compelling evidence to overturn the immigration judge's factual finding of removability in this case. That's the standard here, 242b4b. You have to have enough evidence to compel the contrary conclusion, and there simply isn't anything. All the evidence on the issue of removability goes the other way. Would he have had capacity to seek other basis for relief, like cancellation? Well, if we... Were there other remedies available to him? Possibly, possibly. Again, the I-213 mentions other convictions aside from the firearms conviction for which he was removable. So I don't know if those convictions would have constituted an aggravated felony or not. So there are possibly other convictions out there, as noticed in the I-213, that would bar cancellation of removal. But because he didn't appear, he didn't challenge his removability as charged, he didn't present an application, you know, he's foregone that opportunity to pursue those applications. Your Honors, again, I simply want to close by saying if there are no other questions from the Court... If you told me a little bit more about it... Well, it was a decision in which the issue arose as to whether the government did not introduce documents at the hearing... Is that an aggravated felony case? Yeah, I think it was. Yeah. Yeah, and it was a modified categorical... Categorical, yeah. Well, I would say that the modified categorical approach or the categorical approach, all these technical requirements or these strict requirements in the sentencing and in the aggravated felony immigration context don't necessarily apply to removability based on a firearms conviction. This is not an aggravated felony situation. Because in the aggravated felony, you have all these different particular felonies. There's different categories. And the sentencing judge or the immigration judge has to decide whether the crime fits in that category. So he has to have these specific documents here. But this is not an aggravated felony situation. What we have is simple removability based on a firearms conviction. And it's not as complicated as the aggravated felony context. So I would argue that those analyses for the aggravated felony context don't necessarily apply. The strictures for proving a conviction don't necessarily apply in this context. It would seem to me it would be the other way, that here it's a much simpler problem. And you might be more willing to give the government leeway and flexibility where it was somewhat complicated. In Fernandez-Ruiz, we said the test was whether the government had further documents at the time, not whether it could obtain them if we remanded it. Well, if he had appeared and challenged removability, we don't know, but the government could have produced those documents right there on the spot. That's to say I think this really does depend on the fact that he never showed up to challenge it. And through his proceedings, at any point did he ever challenge his removability based on that. Well, I think the question really is does it make a difference whether you make the transcript or only the tape and whether that's part of the record. If it's true that the immigration judge asked the government, do you have other documents and the government said no, then the question really is if that's not in the record and there's no transcript of it, only a tape, is that different from having a transcript that's in the record? Well, even if that was the transcript and the immigration judge says it doesn't have other documents, I would still submit that he has not produced any evidence to the contrary, any evidence to undermine the I-213 in any way. And that's what is counted in these cases that have undermined the I-213 or found it unreliable is when the aliens contested the information they're in or has suspected the immigration officer of some kind of nefarious motive or something. But that's not in evidence here. It was never claimed. It's not even claimed in the court today. So I would simply ask the court to deny the petition for review. Thank you. Thank you, counsel. Just very briefly, the motion to supplement the record that I mentioned, we filed that well over a year ago. And if I remember correctly, the court issued an order saying that the panel would consider that. Yes, it's still pending. I don't think the government even filed an opposition to that. The panel. And that supplement to the record was to? The transcript. And it's true. The transcript you made of the tape. Yes. And it's true that in an in absentia, in a motion to reopen context, that the government never prepares a transcript of the hearing. And I've always found that to be troubling because, obviously, we're concerned with the in absentia hearing that took place in this case, and there's a transcript, and it ought to be part of the record. We're just asking that the court make that part of the record. Mr. Joby, may I ask you a question? Are you familiar with Kahn on the notice issue? Mr. Truman raises the point that, you know, on the ineffective assistance of counsel issue that the client got notice, and that's enough. In Kahn, we pretty much said that. The exceptional circumstances argument is not a notice argument. It's assuming that he got some notice. Nevertheless, there were exceptional circumstances that led to his failure to appear. Well, but that would be somewhat contrary to the rationale of Kahn, which is regardless of what language you speak and whether you understand what you got, you got notice, and that's enough. I'll have to take a look at that case, Your Honor. Actually, it doesn't come to mind. It's not mentioned by either party. Thank you. Case just argued is submitted. The next case for argument is Salazar, Salazar v. Kiesler.
judges: Fletcher, Reinhardt, Rymer